COOLEY LLP
Michael A. Attanasio, Bar No. 151529
mattanasio@cooley.com
Charles Harrison, Bar No. 313028
charrison@cooley.com
Matthew D. Martinez, Bar No. 333932
4401 Eastgate Mall
San Diego, California 92121-1909
Telephone: +1 858 550 6000
Facsimile: +1 858 550 6420

Attorneys for Plaintiff
QUALCOMM TECHNOLOGIES, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SAN DIEGO DIVISION

| | |
|---|---|
| QUALCOMM TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> TRUONG HOANG, <br><br> Defendant. | Case No. **'22CV0248 CAB BLM** <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

# SUMMARY OF THE ACTION

1. This action arises from the misconduct of Truong Hoang ("Hoang"), a former employee of Qualcomm Technologies, Inc. ("Qualcomm" or the "Company"). Hoang's duties while working for Qualcomm authorized him to have access to highly valuable and confidential Qualcomm information, including trade secrets. Hoang promised in a written agreement to safeguard this information and to not disclose it to others. But in January 2022, Hoang unlawfully exfiltrated from Qualcomm's secure network over a thousand files containing confidential information, including highly confidential information about the design of Qualcomm's high-performance processors. Hoang took these actions while interviewing with, and subsequently accepting an offer of employment from, a major technology company in direct competition with Qualcomm. Qualcomm fears Hoang thereafter transferred the documents to unknown third persons, or that he has retained copies for himself, possibly to disclose and use in future employment. In addition, Qualcomm discovered that Hoang had worked as a contractor for a third technology company, while employed at Qualcomm, in violation of his employment agreement with Qualcomm. Qualcomm brings this action to secure its confidential information and to recover for harm to it caused by Hoang's misconduct.

# PARTIES

2. Plaintiff Qualcomm Technologies, Inc. is a Delaware company with its principal place of business in San Diego, California. It is a wholly owned subsidiary of Qualcomm Incorporated, a Delaware company with its principal place of business in San Diego, California.

3. Defendant Truong Hoang is an individual who, upon information and belief, resides in San Jose, California.

# JURISDICTION AND VENUE

4. This Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1331 because this action arises under the Defend Trade Secrets Act, 18 U.S.C.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

§§ 1836 *et seq.*   This Court has supplemental jurisdiction over Qualcomm's remaining claims under 28 U.S.C. § 1367.

5.   Venue is proper in this Court because a substantial part of the events and omissions giving rise to the claims herein occurred in this district, and because a substantial part of the property that is the subject of the action is situated in this district.  *See* 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

6.   Qualcomm is a world leader in the design and production of semiconductor microchips ("chips").   Qualcomm's chips power cellphones, computers, and an increasing number of other modern machines.  Qualcomm is also in the vanguard of new chip technologies, and the company's current "5G" technology is ushering in a new age of connectivity and speed for wireless devices.

7.   Confidential and trade secret information is at the heart of Qualcomm's business.   Qualcomm operates in a fiercely competitive sector, and it devotes immense resources to research and development efforts in order to innovate new technologies and stay ahead of competitors.  The company's confidential information is of tremendous commercial value to it and to its rivals.  Qualcomm's confidential and trade secret information is also of substantial importance to national security. Qualcomm is a trusted supplier of mission-critical products and services to federal government agencies, and national security programs rely on continued access to Qualcomm products.

8.   Maintaining the confidentiality of proprietary Qualcomm information is absolutely vital for Qualcomm employees.  Qualcomm's Code of Conduct explains that it is "critical" that Qualcomm maintain its "industry leadership," and the "trust of [its] consumers and partners," by "always protecting confidential information," whether that information belongs to Qualcomm, Qualcomm's customers, or third parties who have entrusted that information to Qualcomm.  Qualcomm employees are instructed not to share Qualcomm information, to use proprietary information

only as necessary to perform their job duties, to adhere to Qualcomm's security policies and procedures, and to hold Qualcomm information in strict confidence—even after leaving Qualcomm. Confidentiality is at the heart of Qualcomm's success and leadership.

\* \* \*

9. Qualcomm hired Hoang in March 2021. Before commencing work for Qualcomm, and as a condition to his doing so, Hoang agreed to keep in strict confidence Qualcomm's trade secret and confidential information. This agreement was memorialized in a document titled, "Invention Disclosure, Confidentiality & Proprietary Rights Agreement," (the "Confidentiality Agreement") which Hoang signed on January 30, 2021.

10. Section 2 of the Confidentiality Agreement provides that during the period of his assignment at Qualcomm, Hoang would "have access to secret or confidential information, knowledge or data, whether trade secrets or not . . . (collectively 'Confidential Information')," including:

> matters of a technical nature (such as, without limitation, any methods, know-how, formulae, compositions, processes, discoveries, machines, models, devices, specifications, inventions, computer programs and similar items or research projects) . . . .

11. Hoang expressly agreed to maintain this information in strict confidence:

> I agree I will not during or at any time after termination of my employment with the Company, directly or indirectly, use for myself or others, or disclose or convey to others any Confidential Information of Qualcomm or of others provided to Qualcomm under any agreement of secrecy or confidentiality for planned, contemplated, or actual use by Qualcomm in the course of business, except as may be authorized and required by the Company in the course of my employment with the Company . . . .

\* \* \*

> All Confidential Information, records, computer programs, computer-stored information, computer disks and other media, files, drawings, sketches, blueprints, manuals, letters, notes, notebooks, reports, memoranda, customer lists, documents, equipment and the like relating in any manner to the Company's business and all intellectual property

rights in each of the foregoing, whether prepared by me or not, shall be and remain Qualcomm's sole and exclusive property. I will not make unauthorized copies of any of the foregoing . . . I further agree not to make or retain any copies or extracts of any of the foregoing . . . .

12. Section 4 of the Confidentiality Agreement also required Hoang to avoid conflicts of interest and appearances of conflicts of interest:

I understand that as an employee of the Company, I have a duty of loyalty to the Company. In fulfilling that duty, I will not engage in any activity (including, but not limited to, outside employment, board memberships, outside business activities or investments) that would create or give the appearance of any conflict of interest between me and Qualcomm's interests.

If I wish to engage in any activity that could create or give the appearance of a potential or actual conflict of interest between me and Qualcomm, I agree that I must and shall obtain advance written approval from the Company to engage in such activity, as required by the Company's policies and procedures.

13. When Hoang began work for Qualcomm, his job was to design and develop computer processing unit chips, among other duties. Hoang's work, and the work of the other Qualcomm employees on his team, was proprietary, innovative, and valuable.

14. As part of his duties, Hoang had access to highly confidential and trade secret Qualcomm information including, among other things, confidential documents, processes, schematics, and diagrams related to the chips Qualcomm was designing, and which Hoang was assigned to develop. These materials are confidential and highly valuable, particularly to Qualcomm's competitors, because they reveal secret design components of Qualcomm chips that are still in development.

15. Hoang fully understood his obligation to maintain Qualcomm's confidential and proprietary information in strict confidence. He underwent multiple trainings regarding the proper treatment of confidential and proprietary Qualcomm information.

16. Notwithstanding Hoang's promise to safeguard Qualcomm's Confidential Information, and notwithstanding his training regarding the proper

methods of doing so, Hoang chose to violate his duties to Qualcomm. On January 16, 2022, Hoang successfully transmitted files containing confidential and proprietary information related to computer processing unit technology to his personal cloud storage account.

17. Qualcomm investigators interviewed Hoang on January 20, 2022, regarding this unlawful transfer. During a screensharing portion of the interview, the investigators determined that Hoang had transferred a folder containing *over a thousand* files from Qualcomm's network to his personal cloud storage account. These files included highly confidential information regarding Qualcomm's high-performance computer processors. The files in question reflect the work of a team of *dozens* of engineers, would require years of research and work to develop, and have significant value to Qualcomm's competitors.

18. Later forensic analysis of Hoang's computer revealed that he had downloaded the files and folders he wished to transfer to his desktop and then, after conducting the transfer over a period of twelve hours during which he regularly logged in to his computer to supervise the transfer's progress, attempted to delete those same files and folders from his computer desktop. Investigators later found those files in the trash folder in Hoang's computer.

19. When Qualcomm personnel asked Hoang to explain the massive file transfer, Hoang gave several convoluted, incoherent, and contradictory excuses, including that he had had "problems with IT" (investigators confirmed there were no open IT tickets initiated by Hoang), he was trying to back up the files on his two work computers, and that he had "a personal folder where he has downloaded quite a lot of pictures for painting." Hoang eventually admitted that he had transferred the files containing confidential information in part because he wished to keep them for later reference.

20. During the same interview, after Qualcomm personnel saw in Hoang's email inbox an offer of employment to Hoang from a major technology company and

direct competitor of Qualcomm's, Hoang admitted that he had accepted the offer, despite repeatedly denying earlier in the interview that he had applied for positions outside Qualcomm, interviewed for other positions, or had received other offers of employment within the preceding six months.

21. Qualcomm investigators also learned during their interview with Hoang on January 20, 2022, that, while concurrently employed by Qualcomm, Hoang had accepted contract work from another technology company. After first claiming that he had not yet started working for the company, Hoang later admitted that he had already been performing eight hours of work per week for the company and had been billing the company for his time. Hoang neither informed Qualcomm nor obtained advance written approval from the Company prior to accepting this contract work.

22. The full extent of Hoang's wrongdoing remains unknown. Hoang may have sent the information he misappropriated from Qualcomm to any number of third parties, including Qualcomm's competitors—or he may be retaining any number of copies of the information to use in future employment. Hoang was evasive and dishonest during the initial phase of Qualcomm's investigation, and Qualcomm fears he could use Qualcomm's confidential information to cause the company substantial harm.

23. Although Qualcomm's investigation remains ongoing, it has already suffered damages as a result of Hoang's misconduct, and it will continue to suffer further damages unless additional misconduct is enjoined.

## FIRST CLAIM FOR RELIEF

**Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq.***

24. Qualcomm realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

25. Qualcomm owns and possesses certain confidential, proprietary, and trade secret information, as alleged above. This confidential, proprietary, and trade secret information relates to products and services that are used, shipped, sold and/or

ordered in, or that are intended to be used, sold, shipped, and/or ordered in, interstate or foreign commerce. Qualcomm products are used worldwide.

26. Qualcomm derives independent economic value from the fact that its confidential, proprietary, and trade secret information is not generally known to the public and not readily ascertainable to persons outside Qualcomm, including Qualcomm's competitors. As described herein, Qualcomm has taken, and continues to take, reasonable measures to keep this information secret and confidential. Among other things, Qualcomm (i) requires its employees to execute agreements protecting the confidentiality of Qualcomm's information and to undergo training concerning the proper treatment of confidential Qualcomm data, (ii) limits access to its facilities, (iii) uses encryption and multi-factor authentication tools to safeguard access to its information and to ensure that its sensitive systems and data are protected in the event an account is compromised, and (iv) detects and monitors unauthorized data transfers and other anomalous activity on its network.

27. As part of his duties, Hoang was entrusted with access to Qualcomm's confidential, proprietary, and trade secret information. Hoang had, and continues to have, a duty to maintain the secrecy of that information.

28. As set forth herein, in violation of this duty, and without Qualcomm's consent, Hoang uploaded confidential and proprietary Qualcomm information to a personal cloud storage account in January 2022. The information uploaded by Hoang qualifies as a "trade secret" under the meaning of 18 U.S.C. § 1839(3).

29. By uploading Qualcomm's confidential, proprietary, and trade secret information, Hoang committed one or more acts of actual or threatened misappropriation of trade secrets within the meaning of the Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq*.

30. As a direct result of Hoang's conduct, Qualcomm has suffered—and, if the conduct is not enjoined, will continue to suffer—harm. This harm includes, but is not limited to, investigation and response costs Qualcomm has already suffered,

and costs and harm associated with having its confidential and proprietary information in the hands of non-employees and competitors.

31. Hoang's conduct entitles Qualcomm to an injunction based on actual and threatened misappropriation as set forth in 18 U.S.C. § 1836(b)(3)(A)(i).

32. Qualcomm requests that the Court take affirmative action to protect its trade secrets, as set forth in 18 U.S.C. § 1836(b)(3)(A)(ii), including by authorizing an inspection of Hoang's computers, personal USB and electronic storage devices, email accounts, and cloud storage accounts to determine the extent to which Qualcomm trade secrets were wrongfully taken and/or disseminated to others.

33. Hoang's misappropriation and disclosure of Qualcomm's trade secrets entitles Qualcomm to monetary damages, fees, and costs, as provided in 18 U.S.C. § 1836(b)(3)(B). Qualcomm is also entitled to recover for Hoang's unjust enrichment.

34. Hoang's misappropriation of Qualcomm's trade secrets was willful and malicious under the meaning of 18 U.S.C. § 1836(b)(3)(C)-(D), and Qualcomm is therefore entitled to recover exemplary damages and attorney's fees.

## SECOND CLAIM FOR RELIEF

**California Computer Data Access and Fraud Act, California Penal Code § 502**

35. Qualcomm realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

36. By uploading confidential Qualcomm documents to his personal cloud storage account, Hoang violated California Penal Code § 502(c)(1), which forbids knowingly accessing, and without permission using, data, a computer, a computer system, or a computer network in order to wrongfully control or obtain money, property, or data.

37. By uploading confidential Qualcomm documents to his personal cloud storage account, Hoang violated California Penal Code § 502(c)(2), which forbids

knowingly accessing, and without permission taking, copying, or making use of, data from a computer, computer system, or computer network.

38. As the owner of the data Hoang uploaded to a personal cloud storage account, Qualcomm is entitled to compensatory damages caused by Hoang's violation of California Penal Code § 502, including those expenditures reasonably and necessarily incurred by Qualcomm to verify the security of its data, as well as injunctive relief and attorneys' fees. Cal. Penal Code § 502(e)(1)-(2).

39. Hoang's violations of California Penal Code § 502 were done with oppression and malice and have subjected and will continue to subject Qualcomm to cruel and unjust hardship in conscious disregard of Qualcomm's rights, such that Qualcomm is entitled to an award of exemplary and punitive damages according to proof. Cal. Penal Code § 502(e)(4).

## THIRD CLAIM FOR RELIEF

### Breach of Contract

40. Qualcomm realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

41. Qualcomm is an express third-party beneficiary of the Confidentiality Agreement, and the Confidentiality Agreement's provisions were made for the benefit of Qualcomm and are enforceable by Qualcomm.

42. The Confidentiality Agreement provides that Hoang was required not to "use for [him]self or others or disclose or convey to others" Qualcomm's confidential information, "except as may be authorized and required by the Company in the course of [his] employment with the Company." Hoang further agreed not to "make unauthorized copies" or "retain any copies or extracts" of Qualcomm's confidential information.

43. Despite the express terms of the Confidentiality Agreement, Hoang breached his contractual obligations by uploading confidential and trade secret Qualcomm information to a personal cloud storage account in January 2022.

1  Qualcomm neither required Hoang to upload the information, nor consented to his
2  doing so.
3      44. The Confidentiality Agreement further provides that Hoang was
4  required to "obtain advance written approval from the Company to engage" in any
5  "outside employment" that would "create or give the appearance of any conflict of
6  interest between [Hoang] and Qualcomm's interests."
7      45. Despite the express terms of the Confidentiality Agreement, Hoang
8  breached his contractual obligations by accepting outside contract employment from
9  another technology company, and performing work for that company, while
10 concurrently employed by Qualcomm, without first obtaining written approval from
11 Qualcomm.
12     46. As a direct and proximate result of the foregoing breaches, Qualcomm
13 has suffered, and will continue to suffer, damages in an amount to be proven at trial.
14 Qualcomm has also suffered immediate and irreparable harm and will continue to
15 suffer such harm until Hoang's breaches are enjoined.

## PRAYER FOR RELIEF

Wherefore, Qualcomm respectfully prays for relief as follows:

A. For an order enjoining Hoang and all persons or entities acting in concert or participation with him from obtaining, using, or disclosing any of Qualcomm's confidential information or trade secrets;

B. For compensatory damages in an amount to be proven at trial;

C. For punitive and exemplary damages;

D. For prejudgment interest according to law;

E. For recovery of attorneys' fees, costs, and expenses incurred in this action; and

F. For such other and further relief as this Court may deem just and proper. Qualcomm demands a trial by jury.

Dated: February 23, 2022

COOLEY LLP

By: */s/ Michael A. Attanasio*
Michael A. Attanasio

Attorneys for Plaintiff
QUALCOMM TECHNOLOGIES, INC.

Email: mattanasio@cooley.com

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

11

**COMPLAINT**